IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
SOUTHEASTERN DIVISION

| | |
|---|---|
| United States of America, ) | |
| ) | |
| Plaintiff, ) | |
| ) | **ORDER DENYING** |
| vs. ) | **PLAINTIFF'S MOTION FOR** |
| ) | **SUMMARY JUDGMENT** |
| Joseph Kramer, Rose Kramer, State of ) | |
| North Dakota, and Indymac Bank, F.S.B., ) | |
| ) | Civil File No. 3:05-cv-97 |
| Defendants. ) | |

Before the Court is a Motion for Summary Judgment by the United States (doc. #44). Defendant Rose Kramer has filed a brief in response (doc. #50). Defendant Joseph Kramer has additionally responded by adopting the response brief of Rose Kramer (doc. #51). The State of North Dakota additionally responds, resisting the United States' motion (doc. #54). The United States has filed a reply (doc. #55).

**Summary of Decision**

As there exists material facts that render summary judgment inappropriate, the United States' motion is denied. The trial is stayed for 90 days to await the state court resolution of the divorce matter. The injunction previously issued shall remain in effect until this Court indicates otherwise.

**Background Facts**

In April of 2004, the United States sought to garnish the wages of Defendant Joseph Kramer earned at the North Dakota Association of Counties. The garnishment action was an effort to collect criminal restitution in the amount of $2,433,015.00. In June of 2004, the United States stipulated

1

for the dismissal of the garnishment in exchange for Defendant's agreement to make voluntary restitution payments. In May of 2005, the United States again sought a garnishment of the Defendant's earnings, which was ultimately ineffective because Joseph Kramer's earnings were subject to an Order to Withhold Income for Child Support. This support order enveloped the full amount of Joseph Kramer's disposable income that was subject to garnishment under 28 U.S.C. § 3002. Based on Joseph Kramer's disposable earnings, the United States estimates it would receive $494 every semi-monthly pay period.

In June 2004, Joseph Kramer, and his ex-wife Rose Kramer, stipulated to the terms of their divorce. Rose Kramer was to have sole physical custody of their five children, subject to reasonable visitation, and alternating holidays, and that Joseph was to additionally pay child support in the amount of $3,000 per month. This amount was roughly twice the amount required under the North Dakota Child Support Guidelines for a non-custodial parent with five children and with Joseph Kramer's equivalent income. The Court's Judgment and Decree, entered on June 30, 2004, incorporated the terms of the stipulation between Joseph and Rose Kramer and included the following sentence: "An automatic income withholding order shall be issued in accordance with Chapter 14-09 of the North Dakota Century Code." Pursuant to the judgment, the State Disbursement Unit of North Dakota's Department of Human Services began electronically collecting and transferring the support payments from Joseph Kramer to Rose Kramer. Initially, the amount collected was $1,600 per month, but increased to $3,000 in September of 2005. This left no portion of Joseph Kramer's available for garnishment.

Plaintiff initiated the present suit on the theory that the Kramers obtained a sham divorce, with monthly support payment in the amount of $3,000 per month, in order to hinder, delay, or

defraud the United States in its effort to collect the restitution debt. Joseph and Rose Kramer have answered the complaint separately. The State of North Dakota has intervened the underlying state proceeding, and currently seeks to extinguish the child support component of the June 30, 2004 judgment.

The United States filed a Motion for a Preliminary Injunction on October 6, 2006. Defendants offered no brief in response. The Court scheduled oral arguments on November 20, 2006, to address various jurisdictional issues. On November 16, 2006, two working days prior to the hearing, Defendant Rose Kramer offered a brief in opposition to the October 6th motion, which this Court rejected as untimely. At the November 20th hearing, the North Dakota Office of the Attorney General appeared and indicated that it had contacted the North Dakota Department of Human Services, and further stated that this agency does not oppose the United States' motion and voluntarily submitted to this Court's jurisdiction. On November 22, 2006, this Court issued a preliminary injunction requiring the North Dakota of Human Services to retain $494.00 from each of Joseph Kramer's semi-monthly remittance received from the North Dakota Association of Counties.

**Analysis**

The standard for granting summary judgment is well-established. Summary judgment is appropriate if the record contains "no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56; Celotex Corp v. Catrett, 477 U.S. 317, 322 (1986); Mt. Pleasant v. Associated Elec. Coop., Inc. 838 F.2d 268, 274 (8th Cir. 1988). Applying this standard, the district court's function at the summary judgment stage of the proceedings is not to weigh the evidence and determine the truth of the matter, but to determine

whether there are genuine issues for trial. Quick v. Donaldson Co., Inc., 90 F.3d 1372, 1376-77 (8th Cir. 1996). Moreover, a court considering a motion for summary judgment must view all the facts in the light most favorable to the nonmoving party, and give the nonmoving party the benefit of all reasonable inferences that can be drawn from the facts. Id. "An issue of material fact is genuine if it has a real basis in the record." Hartnagel v. Norman, 953 F.2d 394, 395 (8th Cir. 1992)(citing Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986)). "A genuine issue of fact is material if it 'might affect the outcome of the suit under the governing law.'" Id. (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). Where a reasonable jury could return a verdict for either party on the facts of the case, a genuine dispute exists. Litrell v. City of Kansas City, 459 F.3d 918, 921 (8th Cir. 2006)(citing Anderson, 477 U.S. at 252).

The United States argues that summary judgment is proper because there exists no genuine issues regarding the material facts of the case. The government maintains that the divorce settlement agreement was a fraudulent transfer under the Federal Debt Collection Procedures Act (FDCPA), in that it was conducted with an intent to hinder, delay, or defraud a creditor. 28 U.S.C. § 3304(b)(1)(A). The United States relies on several statements to show that Rose Kramer entered into a sham divorce in order to aid Joseph Kramer's attempts to elude restitution debt. Specifically, counsel for Defendant stated such at the divorce proceeding

> Mr. SHEPPARD: I think we should do that, Your Honor, and reschedule it. And I will ask that he come as well so that he can acknowledge that in open court, too, because I know it was quite excessive. There is a reason for it, frankly, that he's facing a garnishment...

Rose Kramer additionally stated to her coworker Al Gross, wherein she states that divorce was only on paper to avoid paying the restitution debt. Aside from these admissions, the United States points

to other indicia of the fraudulent nature of the Kramers' divorce. These include Joseph and Rose Kramer living under a single roof, as well as Rose Kramer doing Joseph Kramer's laundry, allowing him access to her checking account, and even hosting a 40th birthday for Joseph Kramer.

The finances of Joseph and Rose Kramer are similarly commingled. Joseph Kramer is significantly involved with Rose Kramer's company, Dakota Consulting Group (DCG). DCG was formed in the fall of 2004, after the couple divorced. Joseph Kramer has signed a contract as the President of the Dakota Consulting Group, serves a contact for several of DCG's chief clients, and has access to DCG's checking account.

The United States argues that the above evidence, consisting of defendants' admissions, testimony, and bank records, entitles the government to judgement as a matter of law. The government seeks three remedies. First, it demands an order which establishes that any and all garnishee orders issued in connection with Criminal Case No. 1:94-cr-41-01 are superior and paramount to court-ordered child and spousal support. Secondly, the United States seeks a monetary judgment against Rose Kramer to partially compensate the government for the fraudulent transfers which have already allegedly occurred, and lastly demands an equitable lien on the real property occupied by the Kramers, with the lien being subordinate to the mortgage held by IndyMac Bank, F.S.B.

Transfers by a debtor with the intent to delay or defraud creditors are void. Rozan v. Rozan, 129 N.W.2d 694, 703 (N.D. 1964)(citing N.D.C.C. § 13-01-05). Actual intent to defraud need not be proven in order to establish that a fraudulent conveyance has occurred. 37 Am. Jur. 2d Fraudulent Conveyances and Transfers § 202 (2006). Indicia or circumstantial evidence, if proven by clear and convincing evidence, can be sufficient to establish an intent to defraud. Id. These

5

"badges of fraud" include a close relationship between the debtor and transferee, the debtor retaining possession of the property after the transfer, that the transfer consisted of most of the debtor's assets, and that the transfer occurred in the face of imminent suit by a creditor, all of which the United States are present in the Kramers' divorce and subsequent settlement.

The Court is, however, reluctant to grant summary judgment in the present matter. A transferor's intent is a question of fact. Goodwin v. United States, 67 F.3d 149, 153 (8th Cir. 1995)(citing Commissioner v. Duberstein, 363 U.S. 278 (1960)). While summary judgment is not automatically precluded in such instances, Gregory v. United States, 637 F. Supp. 624, 626-28 (E.D.N.C. 1986), it is nevertheless apparent to the Court that a reasonable jury could find that the Kramers' divorce was genuine. Rose Kramer concedes that financial considerations did play a part in her decision to obtain a divorce, chiefly that she wanted to "start fresh" without the financial encumbrances that continued marriage to Joseph Kramer would entail, but maintains that she did not enter into the divorce for the purposes of fraud. She further states that while she and Joseph Kramer live together, they do not function as a married couple or a household, and have only resided in the same house on occasion, and even then only to retain a sense of normalcy for their five children. Joseph Kramer additionally maintains a separate apartment, and resides there for a great portion, if not most, of his nights. Defendant Rose Kramer argues that a fact finder could reasonably find in her favor and decide that the marriage was not fraudulent. This Court agrees. While the facts surrounding the divorce are highly suspicious, the Court cannot conclude that no genuine factual issues exist. The Court thus denies Plaintiff's Motion for Summary Judgment as to these facts, and does not reach the merits of the State of North Dakota's arguments on the issues of equity of comity.

The Court is aware that the State of North Dakota has intervened in the state court judgment

to determine whether the underlying divorce was fraudulent. The Court agrees that the state court can properly determine whether the Kramers' divorce was a sham. The Court therefore stays the trial in the present matter for 90 days, pending resolution of the divorce matter by the state court. As the preliminary injunction already issued (doc. #43) will remain in effect, the United States suffers no harm in the staying of the trial. If the United States wishes to renew its motion for summary judgment after the state court determines the validity of the divorce settlement, it is free to do so.

## Conclusion

Plaintiff's Motion for Summary Judgment is **DENIED**. The trial is **STAYED** for a period of 90 days.

**IT IS SO ORDERED**.

Dated this 26th day of February, 2007.

    /s/   Ralph R. Erickson
Ralph R. Erickson, District Judge
United States District Court